CASE 48—PETITION ORDINARY—MAY 24.

# Kentucky Central R. R. Co. v. Ackley,

APPEAL FROM PENDLETON CIRCUIT COURT

1. MASTER AND SERVANT—RESPONDEAT SUPERIOR.—Servants in the employ of a railroad company controlling and directing the movements of one train are, with reference to those in the same company upon another train, to be regarded as the agents of the company, and not the agents of each other. And where a servant on one train is injured by the negligence of a servant upon the other, the maxim *respondeat superior* applies, and the company is liable.

In this case, in which the engineer upon a passenger train seeks to recover of the company for injuries received in a collision of his train with a freight train, it is held that there was evidence tending to show that the injury was caused by the willful neglect of not only the engineer, but the conductor of the freight train, who had the power to direct its movements, and therefore the court did not err in refusing a peremptory instruction.

2. COMPENSATORY DAMAGES for personal injuries, when death does not ensue, are confined to the expense of cure, value of time lost, and a fair

Kentucky Central R. R. Co. v. Ackley.

compensation for the physical and mental sufferings caused by the injury, and for any permanent reduction of the power to earn money.

The court in this case instructed the jury that if they believed that by reason of plaintiff's injuries "he was temporarily or permanently disabled from labor at his business in whole or in part, and that said injuries were the result of willful negligence of plaintiff's employes, * * they shall find for him such damages as he sustained, not exceeding the amount claimed in the petition." *Held*—That this instruction restricted the inquiry of the jury, in assessing damages, to the reduction of the plaintiff's power to earn money, and, therefore, the failure to give another instruction as to the criteria of compensation—calling attention to other elements of damages—was not prejudicial to defendant. Moreover, as to physicians' bills and lost time, the plaintiff's attorneys having announced on the trial that he made no claim on that account, and the jury having heard the disclaimer, it is not to be presumed that they considered them.

3. PUNITIVE DAMAGES.—The jury were not authorized by the instruction to find punitive damages. The direction to find such damages as the plaintiff *sustained* is entirely distinct from the idea of punitive damages.

L. T. APPLEGATE AND G. C. LOCKHART FOR APPELLANT.

1. An employe of a railroad engaged in duty on one train can not recover for injury inflicted by the negligence of another employe of the same grade engaged in operating another train. (Fort Hill Stone Co. v. Orm's Adm'r, 8 Ky. L. R., 73; Casey's Adm'r v. L. & N. R. R. Co., 8 Ky. L. R., 439.)

2. An instruction that the jury may give such damages as they believe the one injured has suffered is wrong, because in effect an instruction to find exemplary damages. (Chiles v. Drake, 2 Met., 151; Ky. Cen. R. R. Co. v. Gasteneau's Adm'r, 83 Ky., 121; L. & N. R. R. Co. v. Brooks' Adm'r, 83 Ky., 129.)

3. An instruction to find compensatory damages, without defining what compensatory damages are, is erroneous. (M., H. C. & C. T. Co. v. Maupin, 79 Ky., 105.)

COWAN & FERRIS, JOHN H. FRYER AND J. W. PECK FOR APPELLEE.

A peremptory instruction should not be given unless the mind of the judge is entirely clear that such right should be exercised. (L. & P. Canal Co. v. Murphy, 9 Bush, 583; Barrett v. Meek, Sneed, 34; Taylor v. White, 2 Monroe, 94; Clark v. Castleman, 1 J. J. M., 69; Gregory v. Nesbitt, 5 Dana, 422.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee brought this action to recover damages. for personal injuries resulting from a collision of a passenger train of cars, upon which he was acting as engineer, with a freight train, both being at the time operated upon appellant's road.

The collision, which it is in the petition alleged was caused by the willful negligence of appellant and its servants, occurred a short distance south of the end of the side-track at Cataba station, but at a curve in the road where those in charge of the respective trains could not perceive the danger in time to prevent it. It appears from the evidence the passenger train was, at the time, going from Covington south, and was due at Cataba 9:10 P. M., and at Falmouth 9:18 P. M. There is a slight difference in the testimony of the engineer and the local agent at Falmouth in regard to the precise time the freight train left that station bound north, but we think it is satisfactorily shown it did not leave soon enough, going the allowable rate of speed, to arrive at Cataba and get upon the side-track ten minutes, the time prescribed by the rules of the company, or any length of time, before the passenger train was due there. And as the latter train was as near on time as is generally practicable, and was entitled to the track, it is evident the collision was caused by those in charge of the freight train, which was four or five hours behind time, leaving Falmouth when a collision would be probable if not inevitable. We, therefore, think there was evidence tending to show, if not clearly showing, the injury to appellee was caused by the

willful neglect of not only the engineer but conductor of the freight train, who had the power to direct its movements, and ordered or improperly permitted the departure from Falmouth, and the lower court did not err in overruling the motion of the defendant for a peremptory instruction to the jury, if the maxim *respondeat superior* be applicable to a case like this, and that it should be thus applied has been settled by this court in L., C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 559.

In that case the action was instituted by the personal representative of an engineer, whose life was destroyed by reason of a collision of the train he was on with another freight train. The two trains were not in that case, as in this, moving in an opposite direction, but the one upon which the decedent was acting as engineer was in rear of and ran into the other, that was at the time, and had been for a half an hour or more, stationary at the foot of an up-grade, or vainly trying to ascend it. But notwithstanding the evidence showed the train dispatcher was also negligent, yet the question of the liability of the company for the negligence of the conductor of the train in front in failing to give any signal or warning by which those on the coming train might have been advised of the danger of a collision, was directly considered and determined in the affirmative. It was argued in that case that the rule should be applied that when a number of persons contract to perform service for another, the employes not being superior or subordinate to each other in its performance, and one is injured through the negligence of another,

they are to be regarded as the agents of each other, and no recovery can be had against the employer. But it was held that a different rule prevails when the employment is several, and when one is subordinate to the other, or occupies such a position in the service with reference to his co-laborer as precludes him having any control over his actions or right to advise even as to the manner in which the service is to be performed; and the court used this language: "If Cavens, the person killed, had been on the same train with Armstrong, the negligent conductor, and in a condition, by reason of his equality with him as an employe, to watch over and provide against his negligence, the reasons then for refusing to make the company liable would apply; but when on different trains, and with no opportunity to exercise this watchful care over each other, the reason for releasing the company from responsibility ceases to exist, and in such case those controlling and directing the movement of one train with reference to those upon another train must be regarded as the agents of the company." It is useless to add to what was said in that case, because the rule there adopted is clearly applicable in this, and is reasonable and just.

The next, and only other question made in argument for appellant, arises on instruction No. 1, given at the instance of appellee, as follows:

"If the jury believe from all the evidence that the plaintiff was in the employment of the defendant as engineer of passenger train No. 6, known as the fast line on said defendant's road, and was so in charge of said train on the evening of the first day of De-

cember, 1882, and that said train collided with local freight train No. 13, belonging to said defendant on the said road, near Cataba Station, on said road, and that thereby said plaintiff received injuries on his head, shoulders, hip and spine, or either, and that from said injuries he was temporarily or permanently disabled from labor at his business in whole or in part, and that said injuries were the result of the willful negligence of defendant's employes in control of said freight train No. 13, at said time, they shall find for the plaintiff such damages as he sustained, not exceeding the amount claimed in the petition, unless they shall further believe from the evidence that said plaintiff contributed by his own negligence to bring about said collision and injuries, and but for said plaintiff's negligence he would have escaped the injuries, in which latter case they should find for the defendant." The objections made by counsel to that instruction are, that it authorized the jury to give compensatory damages, without being informed by the court of the criteria by which it was their duty to be governed in fixing the amount; and in directing them, in case they believed the injury was the result of willful neglect, to find punitive damages, instead of leaving such finding to their discretion.

Compensatory damages for personal injuries, where death does not ensue, as held by this court, is confined to the expense of cure, value of time lost, a fair compensation for the physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money. (L., C. & L. R. R. Co. v. Cavens' Adm'r, 9 Bush, 728; Muldraugh's Hill C. & C. T. Co. v. Maupin, 79 Ky., 101.)

Neither the expense of cure, value of time lost, nor mental and physical suffering, are referred to in the instruction as elements of damages sustained by the plaintiff, and to be assessed by the jury; but the language used by the court restricted their inquiry to the extent of his disability to labor at his business, that is, reduction of his power to earn money.

It appears that, during the examination of the plaintiff as a witness, he was asked if the defendant did not pay his physician's bills and also pay for his lost time; whereupon the attorneys for the plaintiff announced he made no claim for expenses on account of medical attention or loss of time. We must, therefore, presume the lower court, as was its duty, purposely omitted to mention in the instruction either of those two elements of damages, and that the jury having heard the disclaimer, did not, in the absence of an instruction to that effect, take them into consideration in assessing the amount. As the jury had the right, and it was their duty, to consider the mental and physical suffering of the plaintiff caused by the injury, the failure of the court to instruct them to do so was certainly not prejudicial to the defendant.

We do not think the jury could have regarded themselves authorized by the instruction to find punitive damages. The language is: "They shall find for the plaintiff such damages as he *sustained*," which is entirely distinct from the idea of exemplary or punitive damages, that might have been given to or found for, but could not, in any sense, have been sustained by him.

There is some contrariety in the testimony as to

the character and extent of the injury done to the plaintiff. But there was evidence before the jury conducing to show his sufferings were great, and the injury of a serious and permanent nature. And we are not, therefore, authorized to say the verdict was the result of passion or prejudice, or that the amount of damages fixed is so excessive, compared with like cases heretofore passed on by this court, as to justify a reversal.

Judgment affirmed.